Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2013, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**TIMOTHY P. BRODEN**
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1303-CR-272 |
| | ) | |
| TAMMY SUE HARPER, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1102-FB-5

**December 30, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

The State of Indiana appeals the order of the Tippecanoe Circuit Court modifying the sentence of Tammy Sue Harper ("Harper"). On appeal, the State claims that the trial court was without authority to modify Harper's sentence because more than 365 days had passed since Harper was sentenced and the county prosecutor did not approve of the modification.

We agree and reverse.

**Facts and Procedural History**

On July 29, 2011, Harper pleaded guilty to Class D felony residential entry and Class D felony theft and admitted that she was a habitual offender. On September 19, 2011, the trial court sentenced Harper to three years on the residential entry conviction and enhanced this sentence by an additional three years under the habitual offender statute. The trial court also sentenced Harper to a concurrent term of three years on the theft conviction, for an aggregate sentence of six years executed.

On September 27, 2011, the trial court entered an amended sentencing order indicating that it would consider modifying Harper's sentence if she completed the "Purposeful Incarceration Program." Appellant's App. p. 54. Subsequently, on December 5, 2012, Harper filed a motion to modify her sentence. The trial court held a hearing on this motion on January 25, 2013.

At the hearing, the trial court and the chief probation officer noted that the local community corrections program was unlikely to accept Harper, as she had "been there in the past and ran up a pretty substantial bill to the tune of about $2,675.00." Tr. p. 2. The trial court then stated:

2

In reviewing this it was my thought that I think Ms. Harper is at a point in her life where [she] is no longer a threat to society and it seemed to me appropriate that we take her off that tax payer rolls and get her back in the community. I was thinking Home with Hope or Seeds of Hope or something like that. *My concern is that I think I may have no legal basis to do that and so I kind of wanted to have a discussion about this.* I from time to time tell Mr. McDaniel that I am going to do something and then I don't think that I have the legal power to do it which puts the Prosecutor's Office in the position to either having to appeal my order which nobody wants to do well Mr. McDaniel may want to do it just for the fun of it but—but I don't want to keep putting Mr. McDaniel in a position that he feels—I put him a (inaudible) position where he is forced to do something. I would like to put Ms. Harper in Home with Hope to see if she makes it. *If you tell me that your office is going to appeal that then I will save everybody the time and the energy and save the tax payers the money and I won't do it.* And you probably want to think about that and talk about it with somebody else.

Tr. pp. 2-3. (emphases added). The deputy prosecuting attorney who appeared at the hearing indicated in the affirmative. The following exchange between the court and the chief probation officer then ensued:

| [COURT]: | I'm just trying to get along but I would ask that you be here because I wanted to expressly ask you your thoughts about your guess about Ms. Harper and what she is likely to do or not do and how she might do at Home or Seeds. |
|---|---|
| [OFFICER]: | Well when we met with the representative from the Department of Corrections they specifically told us that these therapeutic communities that they have are very intense programs and when they complete them they like to see the offenders return to the community under just some basic supervision. |
| [COURT]: | Rather than a Home with Hope kind. |
| [OFFICER]: | Well they didn't necessarily say that directly. They said that the one thing that they would like to see them do are the 12 step meetings, the sponsors, the home groups. I don't know if they really ever considered Home with Hope I think that's a good idea. I saw |

3

Home with Hope Director back here a little bit ago but I turned around and she was gone. My only concern is though that she is what about a year, a year or so into a six year executed sentence with her time cuts I think she is looking at an earliest possible discharge for parole is maybe February of next year. *I would be willing to give her a shot if you want to put her on probation at Home with Hope. I don't have a problem with that but again that's up to—*

[COURT]:        Do you think I am (inaudible)—do you think it's a bad move?

[OFFICER]:      Habitual Offender thing really throws me a little bit but you know I read through the file and the Pre-Sentence Report and it looks like most of that is substance abuse related and given the fact that she is 48 I think that's probably one of those offenders that has aged out and she's just tired of it and so the chances of her getting into trouble again you know maybe pretty slim but there's always that chance.

[COURT]:        Oh yeah. None of us know for sure.

[OFFICER]:      Right.

[COURT]:        I don't think that was exactly a ringing endorsement of my plan.

[OFFICER]:      Sorry.

[COURT]:        I am inclined to give it a try. *Sometime in the next week or so if you have an opportunity to get back with me I will modify her sentence and over your screaming objection. . . .* The Court directs that the Tippecanoe County Prosecutor's Office provide more input to the Court with—in the near future [whenever] that may be.

Tr. pp. 3-5 (emphases added).

The chronological case summary indicates that the prosecutor's office did not provide the trial court with any further input on the matter. Then, on March 5, 2013, the

4

trial court entered an order suspending Harper's sentence to probation. This prompted the prosecutor to action, and the State filed a request to stay the modification order pending appeal, which the trial court denied. The State now appeals.[1]

**Discussion and Decision**

At issue in the present case is the statute governing the modification of sentences, which provides in relevant part:

> (a)  Within three hundred sixty-five (365) days after:
>     (1)  a convicted person begins serving the person's sentence;
>     (2)  a hearing is held:
>         (A) at which the convicted person is present; and
>         (B) of which the prosecuting attorney has been notified; and
>     (3)  the court obtains a report from the department of correction concerning the convicted person's conduct while imprisoned;
> the court may reduce or suspend the sentence. The court must incorporate its reasons in the record.
>
> (b)  *If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, subject to the approval of the prosecuting attorney. . . .*

Ind. Code § 35-38-1-17 (emphasis added). Pursuant to this statute, if a motion to modify a sentence is filed within the 365-day period, modification of the sentence is left to the discretion of the trial court. Hawkins v. State, 951 N.E.2d 597, 599 (Ind. Ct. App. 2011), trans. denied. However, if the motion is made outside the 365-day period, the authority of the trial court depends on whether the prosecuting attorney approves. If the prosecutor agrees, then the matter is within the discretion of the trial court; if the prosecutor disagrees, then the trial court lacks authority to modify the sentence. Id.

---

[1]  We have previously held that the State has the limited authority to appeal under such circumstances. See State v. Holloway, 980 N.E.2d 331, 333-34 (Ind. Ct. App. 2012).

In the present case, the State claims that the prosecutor did not agree with the trial court's sentencing modification and that the trial court therefore was without authority to modify Harper's sentence. Contrariwise, Harper argues that the prosecutor acquiesced in the trial court's decision to modify and that the trial court therefore did have authority to modify her sentence. We are constrained to agree with the State.

To be sure, this court has used the term "acquiesce" when describing the statutory requirement that the prosecutor approve of the sentence modification. See Hawkins, 951 N.E.2d at 599. But the plain language of the statute itself requires more than the lack of an objection; it requires "approval of the prosecuting attorney." I.C. § 35-38-1-17(b).

Here, the deputy prosecuting attorney who appeared at the hearing did not seem to have much of an objection to the trial court's desire to modify the sentence. Indeed, the prosecuting attorney said very little during the hearing. Nevertheless, the fact remains that the prosecuting attorney, through the deputy prosecuting attorney or otherwise, never actually *approved* of the sentence modification. Without such approval, the trial court lacked the statutory authority to modify Harper's sentence.

This is not to say that we are not unsympathetic to the trial court's position. The court specifically told the deputy prosecuting attorney that it would not modify Harper's sentence if the State objected. The trial court also directed the prosecuting attorney to inform the trial court of whether it approved of or objected to the sentence modification. When no such objection or approval was forthcoming, and with what it considered to be a worthy defendant languishing behind bars, the trial court went ahead and modified Harper's sentence. Only then did the State forcefully object.

6

We are not at liberty to ignore the clear language of the statute, which requires the *approval* of the prosecuting attorney to sentence modification that occurs outside the 365-day time limit. Here, the prosecuting attorney failed to give such approval, and the trial court was without authority to modify Harper's sentence.

Reversed.

BRADFORD, J., and PYLE, J., concur.